NATIONAL WALL-PAPER CO. v. DAVIS et al.

(Circuit Court, N. D. Ohio, E. D. December 23, 1899.)

No. 5,737.

**1. CHATTEL MORTGAGES—VALIDITY—PREFERENCES BY INSOLVENT.**

Under Rev. St. Ohio, § 6343, which provides that all assignments in trust, made in contemplation of insolvency, with the intent to prefer one or more creditors, shall inure to the benefit of all creditors, and which, as construed by the supreme court of the state, does not prevent the preference of creditors by chattel mortgages executed in contemplation of insolvency, the fact that a firm of insolvent debtors, prior to and in contemplation of a general assignment for the benefit of their creditors, execute separate chattel mortgages directly to each of a number of creditors at the same time, and which are filed for record at the same time, does not constitute the transaction an assignment in trust, so as to render the preferences invalid.

**2. SAME—INTENTION TO HINDER AND DELAY CREDITORS.**

The fact that goods mortgaged separately to a number of creditors by insolvent debtors considerably exceed in value the amount of each mortgage does not evidence an intention on the part of the mortgagors to hinder, defeat, or delay their other creditors, any more than is necessarily incident to the preferences given, where the day following the execution of such mortgages they make a general assignment, and the mortgagees at once surrender possession of the goods to the assignee, looking to their proceeds when disposed of by him for their security.

This is a suit in equity by an unsecured creditor to have certain chattel mortgages, executed by the debtor, declared to constitute an assignment in trust, inuring to the benefit of all creditors under the Ohio statute.

R. B. Murray and Charles Koonce, for complainant.

Wm. W. Zimmerman, Horace T. Smith, and Charles Truesdall, for defendants.

TAFT, Circuit Judge. This is a bill in equity, filed by the National Wall-Paper Company against seven chattel mortgagees of the firm of McLeod & Jewhurst, the mortgagors, John A. McLeod and Joseph W. Jewhurst, and their assignee for the benefit of creditors, Joseph Davis, to set aside the seven chattel mortgages as fraudulent, or at least to have them declared to operate and inure to the benefit of the complainant, as a creditor of said firm, under the terms of section 6343 of the Revised Statutes of Ohio. McLeod & Jewhurst were retail merchants, dealing in wall paper, artists' supplies, etc., and had been carrying on business since 1890. In 1895 they felt the financial depression, and from that time until 1897 struggled along; but finally found themselves, in September of that year, in an insolvent condition. They consulted an attorney in reference to their situation, and, on his suggestion, they concluded to secure, by chattel mortgage, with notes due one day after date, their relatives and such of their creditors as lived in their home town, and thereafter to file a deed of general assignment for the benefit of all their creditors. They executed two notes, each secured by separate mortgage, to Delia F. Jewhurst, wife of Joseph W. Jewhurst, one of the partners, the consideration named in one note and mortgage being $658.33, and in the other $460; a note and mortgage for $253 to Isabel McLeod, daughter of the other partner, and a note and mortgage for $354.31 to Ina McLeod, another daughter; a note and mortgage for $65 to E. M. Wilson, brother-in-law of McLeod; a note and mortgage for $366.67 to Henrietta A. Brown and David John, owners of the store rented by the firm; and a note and mortgage for $94.05 to the Youngstown Dry-Goods Company. Four of these mortgages—the two to Delia F. Jewhurst, one to Isabel McLeod, and one to Ina McLeod—were filed and put upon record at the same time, on Saturday, September 17, 1897. The remainder were put on file and recorded at the same time, and a few minutes after the others. On the following Monday— September 19th—the firm made an assignment for the benefit of creditors to Joseph Davis, assignee. None of the debts are seriously contested. Indeed, they are all admitted to be bona fide, except the notes to Delia F. Jewhurst, wife of Joseph W. Jewhurst. Much evidence has been gone into upon the validity of these two notes. Without stating my reasons therefor, but after a full examination of the evidence, I have concluded that the first note, for $658.33, is for a valid debt owed by the firm to Mrs. Jewhurst. The other note and mortgage, for $460, I think, however, is not for a valid debt. I find that the alleged basis for this debt was money received by Jewhurst as a pensioner of the United States government, and by him turned into a bank account of their deceased son, to the credit of which account the wife had also deposited money; that it remained in that account, subject to check of the husband; and that, although he may have intended to give it to his wife, the firm was in such failing circumstances that he ought then to have devoted it to his creditors, and not to have made it a gift to his wife, even if he did so. The amount was credited on the books of the company to J. W. Jewhurst, and not to Delia F. Jew-

hurst. This is attempted to be explained on the theory that McLeod, who kept the books, while he knew that it was Mrs. Jewhurst's debt, could not remember her name. It remained in this condition, however, for four or five years. My impression is that the arrangement for the transfer of this money from the husband to the wife, was very indefinite, and that it became definite only when the assignment for the benefit of the creditors became necessary. I find, therefore, that the mortgage to Delia F. Jewhurst, for $460, was invalid, because the debt was not a bona fide debt due from the firm to her.

Much of the evidence has been devoted to showing the intention of the various mortgagees as to what was to be done with the property, in the hope of making it appear to the court that the transaction was really a transfer of the property in trust to Horace Smith, attorney, to secure all the claims of the mortgagees. I find that, with respect to this issue, the complainant has failed. It seems to me that the mortgages were given in the ordinary course, to secure and prefer certain claims of the failing debtors, in contemplation of insolvency. The mortgages were made directly to the creditors, without the intervention of a trustee. It was, of course, necessary, if possession was to be taken by all of them, that some arrangement should be made between them, by which, as to those whose mortgages were of equal priority, at least, a joint possession might be taken. The proposal of Smith that he should take possession for all of them, and their acquiescence therein, was a most natural one, and the best for all parties. The views of the various mortgagees as to what they intended with respect to the property were only their views as to what result the law would attach to that which they had done and expressed in writing, and do not in the slightest degree tend to establish a different agreement from that which was embodied in the mortgages. The mere fact that seven mortgages were executed about the same time, four of them put on file at one time, and three at another, the mortgages being executed directly to the creditors, does not create a trust in any one of the creditors for the benefit of the other creditors. The trust of each creditor, implied in the mortgage, is to account for the balance of the goods mortgaged after payment of that creditor's debt, to the mortgagors. This is not the character of a trust inhibited by section 6343. If it were, it would be impossible to sustain the validity of any chattel mortgage in contemplation of insolvency. In view of the decisions of the supreme court of Ohio, this would be an absurd result. It may be that the action of the mortgagors, in making other mortgages to other creditors, may, by the effect of those other mortgages, create a trust in the first-named creditor to account to those other mortgagees, should he take possession of the property, and sell the same; but that relation of trust to such creditors does not grow out of the chattel mortgage taken by him, but only out of the subsequent or contemporary acts of the mortgagors dehors the mortgage of the first-named creditor.

Nor is the fact that the goods exceeded in amount considerably the amount of each chattel mortgage to be regarded as indicating an intention on the part of the mortgagors to hinder, defeat, or

delay their creditors. The mortgages were evidently made in contemplation of an assignment for the benefit of creditors, and were made only to secure the preferred creditors, and not to delay the payment of the general creditors. They did not hinder the other creditors any more than was incidental to their preference. It was obviously impracticable to divide up the stock and partition it between the preferred creditors. The mortgages in fact did not delay, for the mortgagees immediately surrendered possession to the assignee, waiving their right to retain possession, and looking to the proceeds of the sale by the assignee for their security. The result throws a backward light upon the issue of an intention to hinder, delay, and defraud the other creditors. The fact is that there is nothing about this assignment and these preferences different from thousands of others of the same character, which prefer certain creditors over others by chattel mortgages made in contemplation of insolvency, and which have been sustained time and time again by the supreme court of Ohio. One of the most satisfactory cases upon this subject, in which the whole doctrine is re-examined, is that of Cross v. Carstens. 49 Ohio St. 548, 31 N. E. 506.

The recent statute of Ohio, passed to prevent preferences, of course has no effect upon the issues of the present case, for the reason that these mortgages and this assignment were made prior to its passage. The decree of the court will be that the mortgage to Delia F. Jewhurst, for $460, is set aside as fraudulent, and as in violation of section 6344 of the Revised Statutes of Ohio, as it was in force when the mortgage was made; that all the other mortgages are sustained as valid, and, as to them, the bill will be dismissed; that the costs of this proceeding shall be taxed one-fourth to Delia F. Jewhurst and three-fourths to the complainants, and execution may issue therefor; and that this decree, finding the rights of the complainant as to the second mortgage made by McLeod & Jewhurst to Delia F. Jewhurst, be certified to the probate court of Mahoning county for its action thereon.